### DICKASON *v.* McNEIL.

Opinion delivered September 29, 1919.

SALE OF LAND—WARRANTY DEED—FAILURE TO HAVE ABSTRACT EXAMINED—VENDOR'S LIEN.—D. entered into a contract to purchase certain lands from M., the latter to give a good title. D. paid part cash, was to assume a mortgage on the land, and for the balance of the purchase price agreed to convey certain other property to M. and in default of such conveyance M. was to have a vendor's lien for the said amount on the said property deeded from M. to D. M. executed his deed to D., who entered into

possession, but neglected to have the abstract furnished him by M. submitted to an attorney. Thereafter D., claiming a defect in title and a shortage in acreage, sought to rescind the trade, but remained in possession. M. sued D., seeking to foreclose the vendor's lien, D. having failed to deed the other property to M. *Held,* the contract was, under the facts, binding on D.; that M. could enforce his vendor's lien, and that D.'s remedy for any defects of title or shortage in acreage was upon the warranty in the deed from M. to him.

Appeal from St. Francis Chancery Court; *R. J. Williams,* Special Chancellor; affirmed.

*Mann, Bussey & Mann,* for appellant.

1. Both parties were represented by agents and defendant was drawn into a situation different from that intended by her and was entangled in the web woven by real estate agents.

The sale to Mrs. Dickason was never complete. She never received a good title to the property described in the deed. The title to the 169 acres was not a marketable title, the description being insufficient. 129 Ark. 334. There was also a failure of the grantors to deliver the land as described in the deed. The proof is clear that the agent from whom Mrs. Dickason purchased misrepresented the location of the lines of the property.

2. The refusal of the defendant to make the deed to the Memphis lots was based on a failure of title to the Arkansas lands and she should have been allowed a reasonable time to convey a good title before a lien was declared for $2,000 liquidated damages.

3. Interest should be allowed defendant on the amount paid Moore from the date of payment.

*Hughes & Hughes,* for appellee.

By accepting the deed from Moore appellant agreed to its terms, one of which was that if within the time there limited a deed conveying a merchantable title to the lots be not given she should then pay the sum of $2,000, an agreed sum. Having so agreed, she can not keep the land and refuse to pay. She was allowed for the deficiency of 18.1 acres at $25 per acre. Interest was

properly allowed from date of payment. On the cross appeal, it was error to allow $45 on account of the survey, and the decree should be modified so as to allow appellees $1,547.50 and 6 per cent. interest from April 16, 1917, to date of decree, and from that date until paid.

STATEMENT OF FACTS.

A. J. McNeil, T. F. Lundergan, and T. F. Lundergan as trustee brought this suit in equity against Mary E. Dickason and E. A. Rolfe to foreclose a vendor's lien reserved in a deed from W. J. Moore to Mary E. Dickason, dated January 16, 1917, conveying certain lands in St. Francis County, Arkansas, and which lien was subsequently transferred and assigned by W. J. Moore to the plaintiffs. The evidence, stated in brief, tends to establish the following facts:

J. S. Dickason is the husband of Mary E. Dickason and acted as agent for his wife throughout the transaction. Percifull and Vinsohn were agents for W. J. Moore and acted for him throughout the transaction. The lands which are the subject-matter of the suit are situated in St. Francis County, Arkansas, but all the parties resided in Memphis, Tennessee. After some negotiation between J. S. Dickason for his wife, and Percifull and Vinsohn for W. J. Moore, a written contract was entered into on the 12th day of January, 1917, whereby W. J. Moore agreed to sell to J. S. Dickason four hundred and three (403) acres of land in St. Francis County, Arkansas, being the lands involved in this suit. While the contract was made in the name of Dickason, he was acting as agent for his wife and took the contract in his own name for convenience sake. To complete the sale, on the 16th day of January, 1917, W. J. Moore executed a warranty deed to said lands to Mary E. Dickason. Under the contract the purchase money was to be $25 per acre, or the aggregate sum of $10,075. Dickason gave Percifull and Vinsohn a check for his wife for $2,475. There was a mortgage on the land for $5,100, the payment of which was assumed by Mary E. Dickason. A part of the consideration named in the deed was the following: "It

is agreed and understood by the vendee and vendor herein that the conveyance of certain real estate hereafter to be conveyed is a part of the consideration for the above described land, which real estate to be conveyed is lots thirty-six (36), thirty-seven (37), thirty-eight (38) and thirty-nine (39) of block "I" of the Mt. Arlington Subdivision located in the city of Memphis, Shelby County, Tennessee, which said lots the said Mary E. Dickason agrees to convey or cause to be conveyed unto the said W. J. Moore, or to his order, by warranty deed conveying a good merchantable title, such conveyance to be made within ninety days from this date, and should the said Mary E. Dickason fail or be unable to make such conveyance, she hereby agrees to pay to the said W. J. Moore the sum of two thousand ($2,000) dollars; and to secure the conveyance of said lots or the payment of the said $2,000 a vendor's lien is hereby retained on the said Arkansas land, but when the said Mary E. Dickason conveys the said lots or pays the said $2,000, the said Moore agrees to make a proper release of this lien."

The Memphis lots were estimated to be worth $1,500 in cash, but were placed in the deed at the value of $2,500. The contract provided that Moore was to furnish abstracts of title to the land and convey to Dickason a good title thereto. The title to the property was not examined before the deed from Moore to Mrs. Dickason was executed. The deed was delivered to Dickason and he took possession of the lands in St. Francis County for his wife. He received a warranty deed to the lands. Percifull told Dickason that he would have a survey made of the lands and showed Dickason where the line was. Soon after the deed was delivered to Dickason he took possession of the lands and commenced to build some houses. He was told that the line did not commence where Percifull had shown him it did, but that it was back some 200 yards to the east. Dickason then went back to Memphis and told Percifull that the line was not where he said it was and that he would not take the lands. Percifull again went on the lands with Dickason and showed him the same

place he had shown him before the deed was executed. Dickason told Percifull that the line was back further 200 yards; that he did not want the lands but wanted his money back. Finally Percifull made a resale of the lands to a Mr. Mahan and wanted Dickason to give him a warranty deed. Dickason refused to do this but said that his wife would give a quitclaim deed to Mahan and that Moore would give him a warranty deed. Mrs. Dickason did not convey to Moore the lots in Memphis as she had agreed to do. Some time after the time had elapsed within which she was to convey these lots to Moore, a flaw was discovered in the title to the St. Francis County lands, and Mahan refused to complete his contract of purchase of them on that account. Dickason continued in possession of the lands for his wife, but she never did execute any deed to the Memphis lots; nor did she ever offer to deed the lands back to Moore. By assignment the vendor's lien of Moore came to the plaintiffs in this action.

H. Gannaway, an attorney, examined the title for F. W. Mahan when he obtained his contract to purchase the St. Francis County lands. He examined the abstracts of title and found some defects in the title which he pointed out to the parties and specifically described in his testimony herein. Mahan then declined to carry out his contract of purchase. Gannaway also discovered the defects in the title to the Memphis lots and specifically pointed out such defects in his testimony.

Other testimony will be stated or referred to in the opinion.

The chancellor found that there was a vendor's lien reserved in the deed from W. J. Moore to Mary E. Dickason dated January 16, 1917.

The court further found that the consideration for the conveyance was at the rate of $25 per acre or the aggregate sum of $10,075; that the sum of $2,475 was paid in cash by Mary E. Dickason at the time the deed was executed; that by the terms of said deed Mary E. Dickason assumed as part of the consideration a prior encum-

brance on the land of $5,100 and the accrued interest; that the remainder of the consideration was the conveyance of the Memphis lots by Mary E. Dickason to W. J. Moore which was in the language set out in our statement of facts.

The court further found that Mary E. Dickason did not, within the time provided for in the deed, tender a deed of the Memphis lots to Moore, and that she did not have a good and merchantable title to said lots to convey; and that the vendor's lien of W. J. Moore was duly transferred and assigned to the plaintiffs.

The court further found that there was a deficiency in the acreage in the land in the deed from W. J. Moore to Mary E. Dickason to the amount of 18.1 acres and that the agreed price was at the rate of $25 per acre.

The court further found that Mary E. Dickason was entitled to a further abatement of the purchase price in the sum of $45, the expense of having the land surveyed.

The court was of the opinion that a decree should be in favor of the plaintiffs for the sum of $1,502.50 with 6% interest thereon from April 16, 1917, amounting in the aggregate at the date of the decree to the sum of $1,551.33. A decree was entered in accordance with the opinion and the finding of the court.

The case is here on appeal.

HART, J., (after stating the facts). It is contended by counsel for the defendant, Mary E. Dickason, that the decree should be reversed because under the contract of purchase Mrs. Dickason was to have a deed that conveyed a good title to the St. Francis County lands and that this she never got. The deed conveyed from Moore to Mrs. Dickason 403 acres of land in St. Francis County, Arkansas, and counsel for the defendant now claims that because the deed to 169 acres of the land had a defect in the description there was no completed sale of the lands. The preliminary contract of sale between Moore and Dickason provided that Dickason should receive a warranty deed conveying a good title to the Arkansas lands. A warranty deed was duly executed and delivered to Dick-

ason for his wife. Dickason had the right to have the title to the lands examined before completing the sale. He also had the opportunity to do this, for abstracts of title were furnished him in compliance with the contract. He accepted Moore's deed without asking legal advice about the title and entered into possession of the lands and has been in possession of them ever since. Even after he says that he discovered that there was a defect in the description of the lands as contained in the deed, he did not offer to have the lands reconveyed to Moore by his wife; nor did he relinquish possession of the lands or offer to do so in favor of Moore. It is true he acquiesced in the sale of the lands to Mahan, but this was done on the ground that there was a deficiency in the quantity of lands. It was while the sale to Mahan was in progress of negotiation that the defect in the title was discovered. Mahan refused to complete the sale on account of this alleged defect. Even after this Mrs. Dickason continued in possession of the lands and never offered to relinquish possession of them or reconvey them to Moore. Under these circumstances her only remedy would be to recover on the covenants of warranty contained in the deed from Moore to her. The deed from Moore to Mrs. Dickason provided that she was to convey or cause to be conveyed to Moore within ninety days from the date of the deed four certain lots in Memphis by warranty deed conveying a good and merchantable title; and that, in the event she should fail or be unable to do so, she would in lieu thereof pay to the grantor the sum of $2,000. A vendor's lien was expressly retained in the deed to secure the conveyance of the said lots or the payment of said sum of money as the case might be.

The record shows that Mrs. Dickason did not have a good title to the Memphis lots, and that she did not convey or cause to be conveyed these lots to Moore. The ninety days had expired long before she discovered any defect in the title to the Arkansas lands. No excuse is shown why Mrs. Dickason did not carry out or attempt to carry out this provision of the deed. When all the

circumstances are considered, as above stated, we are of the opinion that the decision of the chancellor was correct.

The chancellor, without objection, allowed Mrs. Dickason an abatement of the purchase money to the extent of the deficiency in the amount of land and of the amount of money expended in making a survey of the land according to the agreement of Moore's agents.

The plaintiffs have presented a cross-appeal on the question of interest. Without going into details on this branch of the case, it is sufficient to say that we have examined the record and find the decision of the chancellor to be correct.

The decree will therefore be in all respects affirmed.